```
 1  TODD W. BURNS
    California State Bar No. 194937
 2  FEDERAL DEFENDERS OF SAN DIEGO, INC.
    225 Broadway, Suite 900
 3  San Diego, California  92101-5008
    Telephone No. (619) 234-8467
 4  Email: Todd_Burns@fd.org

 5  Attorneys for Mr. Duarte
```

|  |  |  |
|---|---|---|
| 8 | | UNITED STATES DISTRICT COURT |
| 9 | | SOUTHERN DISTRICT OF CALIFORNIA |
| 10 | | (HONORABLE BARBARA L. MAJOR) |

| | | |
|---|---|---|
| 11 | UNITED STATES OF AMERICA, ) | Criminal No. 08CR0284-BLM |
| 12 | Plaintiff, ) | |
| 13 | v. ) | **DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRE-TRIAL MOTIONS** |
| 14 | ORLANDO DUARTE-CELESTINO, ) | |
| 15 | Defendant. ) | |

**I.**

**BACKTROUND**[1]

According to media coverage, Orlando Duarte-Celestino is (or was) a "person of interest" or a suspect in New Year's eve 2008 murder in Golden Hill, San Diego. This is apparently because he is homeless, and frequents the area of Golden Hills where the victim was found. Based on this, he was arrested on either January 23 or 24, 2008, in the morning. Mr. Duarte was taken to the San Diego police station on Broadway Avenue; when he arrived, saliva and hair samples were taken from him, and he was questioned

---

[1] The facts set out below are supported by the declarations of Mr. Duarte (Exhibit A) and Todd Burns (Exhibit B), and other attached exhibits. (Incidentally, Mr. Duarte's declaration statements may not be used against him at trial. See Simmons v. United States, 390 U.S. 377, 394 (1968).) Unless the government's opposition to the motions filed herein is accompanied by an appropriate declaration, the Court should accept the facts alleged herein as undisputed, and grant Mr. Duarte's motions without an evidentiary hearing. See Criminal Local Rule 47.g.1.

1  about, among other things, the location of his green card. Shortly thereafter, he was questioned about some
2  photos and his routine. At no time prior to this questioning was he advised of his <u>Miranda</u> rights. It was only
3  later, when he was hooked up to a polygraph machine, that Mr. Duarte was first advised of his <u>Miranda</u>
4  rights.

5  After being questioned for most of the day, Mr. Daurte was taken to the San Diego County jail in
6  downtown San Diego, where he was held for several days without being taken to court, having a lawyer
7  appointed, meeting with a lawyer, or being informed what was happening.

8  To the best of his recollection, on January 31, 2008, Mr. Duarte was picked up at the downtown
9  County jail by United States immigration officials, who took him to be fingerprinted and photographed, and
10 then took him to George Bailey San Diego County jail, where he spent the night. Immigration officials
11 picked him up at George Bailey the next morning, and took him to federal court on February 1, after which
12 he was taken to the Metropolitan Correctional Center ("MCC") in San Diego.[2]

13 Mr. Duarte has never been shown a warrant for his arrest, a warrant to seize his belongings, or a
14 probable cause statement to justify his arrest and detention by the San Diego police. The first time he went
15 to court following his arrest was his federal court appearance on February 1, 2008.

16 At no time since Mr. Duarte was arrested by the San Diego police has anyone taken him before an
17 immigration judge, nor notified him that he is subject to deportation or other immigration proceedings.

18 As mentioned in court on February 5, 2008, undersigned counsel has reviewed Sheriff's booking
19 records from the San Diego County jail, which relate to Mr. Duarte, and there are a few points that bear
20 noting. First, the Sheriff's records indicate Mr. Duarte was arrested on January 24, 2008, but that may be
21 because he was not booked into the jail until that date; as mentioned above, Mr. Duarte's recollection is he
22 was arrested on January 23.

23 Second, the Sheriff's records indicate that on January 28, 2008, ICE Agent Michael Haynes (the
24 author of the probable cause statement accompanying the complaint in this case), requested that the jailors

---

[2] Candidly, Mr. Duarte is unsure of some of the dates and exactly where he was taken, and defense counsel has had difficulty sorting out these questions based on the materials available. For example, it is possible immigration authorities took Mr. Duarte to CCA in Otay Mesa, not to George Bailey, to spend the night of January 31, 2008. Another good reason for the government to provide timely discovery.

"rebook and release [Mr. Duarte] to ICE agents in the AM." According to the Sheriff's records, this "re-arrest" and "re-book" was with respect to "deportation proceedings," although those never occurred. It seems obvious what happened here: the jail officials would not continue to hold Mr. Duarte without any charges pending, so Agent Haynes requested they continue to hold him with respect to non-existent "deportation proceedings."

## II.

## JURISDICTION

As an initial matter, undersigned counsel previously argued that this Court did not have jurisdiction to adjudicate this case, based on Federal Rule of Criminal Procedure 58. However, the Court seems to be correct that this was based on undersigned counsel's incorrect conflation of "petty offense" with "petty offense for which no offense of imprisonment will be imposed."

## III.

## THE COURT SHOULD SUPPRESS ANY STATEMENTS TAKEN IN VIOLATION OF MIRANDA

Mr. Duarte moves to suppress any statements taken in violation of Miranda, including those taken by the San Diego police. The Court should also compel production of Mr. Duarte's statements, as required by Federal Rule of Criminal Procedure 16(a)(1)(A) and (B).

## IV.

## THE COURT SHOULD COMPEL NOTICE PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(4)(B)

As discussed in more detail below, the government has essentially ignored two discovery requests, and has not produced even Mr. Duarte's alleged statements, nor any information or documents with respect to his arrest. Accordingly, defense counsel is proceeding somewhat in the dark with respect to the motions filed herein; this is particularly problematic in that Mr. Duarte can hardly be expected to appreciate the niceties that distinguish state from federal custody. Accordingly, there are discovery issues raised above and below, but, as an initial matter, the government should be compelled to comply with Rule 12(b)(4)(B)'s notice requirement: what discoverable evidence does the government intend to use in its case-in-chief?

//

1  //

## V.

## THE COURT SHOULD DISMISS, OR SUPPRESS, BASED ON MYRIAD CONSTITUTIONAL AND STATUTORY VIOLATIONS RELATING TO MR. DUARTE'S ARREST AND DETENTION

Mr. Duarte moves to dismiss and/or suppress based on numerous constitutional and statutory violations by state and federal officials.

**A.     State Officials' Violations**

Evidence obtained by state officers (here, the San Diego police) in violation of the Fourth Amendment may not be used in this proceeding. See Elkins v. United States, 364 U.S. 206, 223-24 (1960). Mr. Duarte moves to dismiss and/or suppress based on the following violations by state officials: (1) warrantless arrest, unjustified by any exigency, and unsupported by probable cause; and (2) failure to submit arrest to magistrate judge for probable cause determination.

**1.     Warrantless Arrest, Unjustified By Any Exigency, And Unsupported By Probable Cause**

As an initial matter, undersigned counsel specifically requested that the government provide discovery with respect to Mr. Duarte's arrest by San Diego police. This request has been ignored.[3] Instead, the government provided nineteen pages of documents, consisting of the following: (1) the complaint and related materials, with defense counsel already had (four pages); (2) a rap sheet (four pages); (3) almost entirely inscrutable immigration service documents (nine pages); (4) an undated fingerprint card (one page); and (5) and FBI form indicating the charge in this case (one page).[4] Given the specific discovery request, and the government's failure to produce anything, Mr. Duarte is proceeding on the assumption there was no warrant, and no probable cause.

Of course, it is the government's burden to establish the legality of the arrest. See United States v. Perez-Castro, 606 F.2d 251, 253 (9th Cir. 1979). Despite this, the government has produced nothing.

---

[3]     Attached as Exhibit C are the two letters defense counsel sent to government counsel requesting discovery.

[4]     The discovery produced by the government is attached as Exhibit D.

1  Accordingly, the Court should compel discovery with respect to: (1) whether there was an arrest warrant;
2  (2) any exigency for not having a warrant; and (3) facts relevant to probable cause to arrest, including the
3  lack thereof.

**2.      Failure To Submit Probable Cause Determination To Judge**

Assuming the arrest was warrantless, but the Court finds it was nevertheless lawful, state officials nevertheless violated Mr. Duarte's constitutional rights by failing to submit the arrest for a probable cause determination by a judge.

In Gerstein v. Pugh, 420 U.S. 103, 125 (1975), the Supreme Court held that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to extended detention following a warrantless arrest. Subsequently, in County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991), the Supreme Court held that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein." However, the Court emphasized that delays less than 48 hours may be held unreasonable:

> This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate Gerstein if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake.

McLaughlin, 500 U.S. at 56. The 48-hour rule is thus not dispositive of whether a delay is reasonable. Rather, its significance is that it shifts the burden to the government "to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." Id. at 57. In considering this question, the Court should be aware that "that it is improper to delay arraignment in order to investigate the suspect's participation in additional crimes." Anderson v. Calderon, 232 F.3d 1053, 1070 (9th Cir. 2000).

Mr. Duarte was arrested on the morning of either January 23 or 24, and was held at a County jail until February 1. According to the jail records, he was in the "custody" of the San Diego police until at least January 28, and arguably was really in San Diego police custody -- due to ICE collusion -- until February 1. Regardless, Mr. Duarte was in San Diego police custody for at least four days without any probable cause determination being passed on by a judge, and it is apparent that was motivated by the San Diego police's desire to hold him because he was being investigated for the Golden Hills murder.

Given the circumstances, the Court should suppress any statements Mr. Duarte made to San Diego police. See id. at 1070-71 (holding that suppression is appropriate remedy for violation of Gerstein rule).

**B.      Federal Officials' Violations**

Mr. Duarte moves to dismiss and/or suppress based on the following violations by federal officials: (1) warrantless arrest; (2) failure to submit arrest to magistrate judge for probable cause determination; (3) unnecessary delay in first court appearance; and (4) unreasonable arrest based on pretext.

**1.      Warrantless Arrest**

Mr. Duarte has been provided with no discovery indicating there was a warrant for his arrest by federal agents, nor is there any apparent exigency for failing to get a warrant, considering he was in the County jail. Accordingly, the Court should suppress the fruits of the federal government's warrantless arrest.

**2.      Failure To Promptly Submit Probable Cause Determination To Magistrate Judge**

Federal officials also violated the Gerstein rule. As indicated above, in obvious collusion with San Diego police, on January 28 ICE Agent Haynes had Mr. Duarte booked "into" the San Diego County jail, based on non-existent "deportation proceedings." Yet the probable cause determination was not submitted to this Court until January 31, 2008, as indicated on the complaint (Exhibit E). This is well beyond the forty-eight hour rule set out in County of Riverside. Given that Agent Haynes was obviously having Mr. Duarte held as a favor to the San Diego police, while they investigated Mr. Duarte for the Golden Hills murder, this delay was inexcusable. Accordingly, any statements Mr. Duarte made to federal officials should be suppressed.

**3.      Delay In Initial Appearance**

The delay in Mr. Duarte's initial appearance in federal court -- from January 28 to February 1 -- was also unlawful.

Pursuant to Federal Rule of Criminal Procedure 5(a), "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge . . . ." "Courts look to 18 U.S.C. §3501(c) to determine whether pre-arraignment statements obtained in violation of Rule 5(a) are admissible." United States v. Van Poyck, 77 F.3d 285, 288 (9th Cir. 1996). Under §3501(c), if the statements were made within six hours of arrest or detention, they will not be excluded solely because of pre-arraignment delay. Id. However, the six-hour "safe harbor" period does not seem to apply, because any

1  statements by Mr. Duarte to federal officials likely were made on January 31, 2008, three days after his
2  federal "arrest."
3        To determine if there is a Rule 5(a) violation, the Ninth Circuit has articulated two different tests.
4  See Van Poyck, 77 F.3d at 288-89 (noting the intra-circuit conflict). "In one line of cases, [the Ninth Circuit
5  has] looked to the reasonableness of the delay; if it is reasonable, the statement is admissible. In another line,
6  [the Ninth Circuit has] looked to public policy concerns such as discouraging officers from unnecessarily
7  delaying arraignments, preventing admission of involuntary confessions, and encouraging early processing
8  of defendants; if public policy favors admission, the statement is admissible." See id. at 289.
9        The Ninth Circuit has avoided choosing which of these two tests is the law of the Circuit. Under
10 either test, Mr. Duarte's statements to federal officials should be suppressed: the reason for the delay was
11 because federal officials were working in collusion with the San Diego police to hold Mr. Duarte while he
12 was being investigated for the Golden Hills murder. Cf. United States v. Wilson, 838 F.2d 1081, 1085 (9th
13 Cir. 1988) ("The desire of the officers to complete the interrogation is, perhaps, the most unreasonable excuse
14 under §3501(c)"); see also United States v. Alvarez-Sanchez, 975 F.2d 1396, 1405 (9th Cir. 1992) (same),
15 rev'd on other grounds, 511 U.S. 350 (1994).
16       **4.    Unreasonable Arrest Based On Pretext**
17       Finally, Mr. Duarte moves to dismiss the information because it is obvious this case was brought
18 in collusion with the San Diego police, who could not make a probable cause showing with respect to the
19 Golden Hills arrest, and thus could not themselves hold Mr. Duarte.
20       "The preliminary stages of a criminal prosecution must be pursued in strict obedience to the
21 safeguards and restrictions of the Constitution and laws of the United States." Abel v. United States, 362
22 U.S. 224, 226 (1960). Accordingly, the Supreme Court in Abel made clear that the government may not
23 arrest a person on one charge (there, an immigration violation) as a pretext to investigate him for another
24 charge (there, espionage). See id. Similarly, "the Supreme Court in United States v. Lefkowitz, 285 U.S.
25 452, 465 (1932), held that an arrest for the primary purpose of furthering an ulterior goal is unreasonable
26 under the fourth amendment." United States v. Roberts, 928 F. Supp. 910, 933 (W.D. Mo. 1996). Moreover,
27 given that the federal government is one of limited powers, and the general police power is reserved to the
28 states, see United States v. Morrison, 529 U.S. 598, 618 n.8 (2000), it is improper for the federal government

1  to use federal processes to arrest and detain an individual for state authorities who are investigating that
2  individual. Cf. United States v. Wilson, 1986 WL 3441 (N.D. Ohio 1986) (holding that detention based on
3  uncharged offense was not permissible).
4      Accordingly, Mr. Duarte's arrest by federal officials was unreasonable, and the Court should dismiss
5  the information, or at least suppress any fruits of that arrest.

## VI.

### THE COURT SHOULD DISMISS BECAUSE, UNDER THE CIRCUMSTANCES HERE, THE OFFENSE CHARGED IS AN IMPERMISSIBLE STATUS OFFENSE

9      Mr. Duarte also moves to dismiss the information because, under the circumstances here, the offense
10 charged is an impermissible status offense. Specifically, the government seeks to punish Mr. Duarte for
11 being poor. As such, application of 8 U.S.C. §1304(e) here violates the Eighth Amendment.
12      As far as the relevant facts, Mr. Duarte's green card was stolen. He has been financially unable to
13 both eat and afford the $370 green card replacement cost, see Duarte Dec. at ¶10 (Exhibit A), and
14 immigration authorities make no allowance for providing a replacement card at a reduced, or no, cost, based
15 on ability to pay.[5]
16      The argument here is identical to that which prevailed in United States v. Jones, 444 F.3d 1118 (9th
17 Cir. 2006). In that case, six homeless people successfully sued to enjoin enforcement of a Los Angeles
18 criminal ordinance that prohibited sitting, lying, or sleeping on public streets or sidewalks, at all times. That
19 opinion was later vacated because the parties settled the case. See 505 F.3d 1006 (9th Cir. 2007).
20 Nevertheless, while not controlling, the legal arguments set out therein are instructive and exhaustive; those
21 arguments are abbreviated here.[6]
22      In Robinson v. California, 370 U.S. 660 (1962), the Supreme Court held that a state may not convict
23 a person for being addicted to narcotics, consistent with the Eighth Amendment's prohibition against cruel

---

[5]  A copy of the Customs and Immigration Services' requirements for obtaining a replacement green card are attached as Exhibit F. As indicated therein, there are exceptions for which the filing fee is not required, but none of those exceptions relates to poverty.

[6]  Counsel notes that in United States v. Ritter, 752 F.2d 435, 438 (9th Cir. 1985), the defendant raised an Eighth Amendment claim with respect to §1304(e). However, it is apparent that was a facial, not as applied, challenge.

and unusual punishment. At a minimum, Robinson established that a state may not punish a person for who he is, independent of anything he has done.

Six years after its decision in Robinson, the Supreme Court decided Powell v. Texas, 392 U.S. 514 (1968). Powell challenged a Texas statute prohibiting a person from being drunk in public. Although the trial court found Powell suffered from "the disease of alcoholism which destroys the afflicted person's will to resist drinking and leads him to appear drunk in public involuntarily," it rejected Powell's constitutional defense. Id. at 521 (quotations omitted). In a 4-1-4 opinion, the Supreme Court affirmed Powell's conviction. In the plurality opinion, four justices interpreted Robinson as prohibiting only the criminalizing of pure status, not conduct which might flow inexorably from that status. In a dissenting opinion, four justices read Robinson as standing for the proposition that "[c]riminal penalties may not be inflicted on a person for being in a condition he is powerless to change." Id. at 567 (Fortas, J., dissenting).

In a separate opinion, Justice White rejected the plurality's status-conduct distinction, and concluded that "[t]he proper inquiry is whether volitional acts [sufficiently proximate to the condition] brought about the criminalized conduct or condition." Id. at 520 n.2 (White, J., concurring in judgment). This position is consistent with the Powell dissenters, who quoted and agreed with Justice White's standard. Id. at 568 (Fortas, J., dissenting). Accordingly, five Justices in Powell understood Robinson to hold that the Eighth Amendment prohibits the state from punishing an involuntary act or condition, if that act or condition is the unavoidable consequence of one's status or being. See id. at 548, 550 n.2 (White, J., concurring in the judgment); see also Robert L. Misner, *The New Attempt Laws: Unsuspected Threat to the Fourth Amendment*, 33 Stan. L. Rev. 201, 219 (1981) ("the consensus [of White and the dissenters apparently] was that an involuntary acts does not suffice for criminal liability").

Here, Mr. Duarte is not poor by choice. He is caught in a cycle of being homeless, not being able to get a job, and thus barely being able to support his most basic needs. He certainly cannot afford the $370 green card replacement fee. See Duarte Dec. at ¶10 (Exhibit A). Accordingly, his failure to replace his green
//
//
//
//

1  card is not a volitional act, it is a result of his impoverished condition. To punish him for that would violate
2  the Eighth Amendment, and be an impermissible throwback to debtors' prisons.[7]

### VII.

### THE COURT SHOULD DISMISS BASED ON SELECTIVE PROSECUTION AND/OR OUTRAGEOUS GOVERNMENT CONDUCT

The government's actions in arresting, detaining, and prosecuting Mr. Duarte amount to: (1) impermissible selective prosecution; and (2) outrageous government conduct.

**A.    Relevant Background**

The facts here show Mr. Duarte was arrested and charged not based on any concern about a violation of §1304(e), but rather to hold him while the state investigated the Golden Hills murder. This is obvious for a number of reasons.

First, it is defense counsel's understanding that the state court rule and/or practice is that an arrested defendant must be brought to court within three business days of arrest. See Burns Dec. at ¶4 (Exhibit B). It seems ICE Agent Haynes's requested January 28 "re-booking" of Mr. Duarte, to hold for non-existent "deportation proceedings," was meant to circumvent that deadline, allowing Mr. Duarte to remain at the County jail until February 1, 2008.

Second, the complaint says Mr. Duarte came to Agent Haynes's attention "via a law enforcement source." Give the circumstances, does anyone believe that law enforcement source would have contacted Agent Haynes, and Agent Haynes would have picked up Mr. Duarte, who he knew to be a legal resident, absent collusion to hold Mr. Duarte while the state authorities investigated the Golden Hills murder?

Third, the government never -- or almost never -- charges §1304(e) in isolation. Defense counsel has had a search run of Federal Defenders' records relating to new complaints dating back to 1980, and cannot find a single case of §1304 being charged in isolation. See Burns Dec. at ¶2 (Exhibit B). A search of Westlaw reveals only three cases -- nationwide -- in which §1304(e) seemed to be the only charge involved: (1) United States v. Abrams, 422 F.2d 86 (2d Cir. 1970), in which an attorney was charged with

---

[7]    Relatedly, Congress and the courts routinely refuse to impose fines on those who cannot afford them. There is no meaningful distinction between that and prohibiting punishing someone who cannot afford to pay for an identification.

1 causing aliens to violate §1304(e), because he didn't forward to his clients green cards the INS mailed to him;
2 (2) United States v. Hernandez, 2005 WL 1058885 (E.D. Wis. 2005), in which the §1304(e) charge appeared
3 to be part of a plea bargain based on the defendant's false claim to United States citizenship; and (3) United
4 States v. Mendez-Lopez, 528 F. Supp. 972 (D. Okla. 1981), in which the §1304(e) charge was a mistake,
5 which resulted in reversal.  Thus, the nearly forty-year-old Abrams case is the only case in which §1304(e)
6 was truly charged in isolation, and it is starkly different from this case.

7       That §1304(e) cases are never charged in this district is something this Court knows from long
8 experience as a federal prosecutor and magistrate judge.  That countless such cases could be brought is
9 common sense.  Hundreds of thousands of green card holders live and pass through this district annually, and
10 many pass through border and immigration checkpoints in this district.  It is indisputable that many will at
11 times forget their green cards at home, lose them, or have them stolen, and that a law enforcement officer
12 will sometimes discover this, if nothing else at a checkpoint or the border.  Common sense tells us what
13 happens when these people encounter immigration authorities:  the authorities run a check, and if they
14 confirm the person is legally here, the person is allowed to go.  Immigration authorities certainly don't go
15 to the efforts to arrest, detain, and prosecute for §1304(e) those they know are here legally; that is, those
16 similarly situated to Mr. Duarte.

**B.    The Law**

    **1.    Selective Prosecution**

In Yick Wo v. Hopkins, 118 U.S. 356, 373-74 (1886), the Supreme Court set out the equal protection basis for challenging the government's selective prosecution of individuals:

> Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.

"In order to make out a prima facie case of selective prosecution, [Mr. Duarte] must show that:  1) others similarly situated were not prosecuted, and 2) the prosecution was based on an impermissible motive." United States v. Nelson, 137 F.3d 1094, 1105 (9th Cir. 1988).  With respect to the latter factor, "a defendant must show evidence of impermissible motive at some crucial state in the procedures leading to the initiation of prosecution . . . ."  United States v. Ness, 652 F.2d 890, 892 (9th Cir. 1981).  Once a *prima facie* case is

made out, "the burden of going forward with proof of nondiscrimination [rests] with the government." United States v. Falk, 479 F.2d 616, 624 (7th Cir. 1973); United States v. Redondo-Lemos, 27 F.3d 439, 442 (9th Cir. 1994); see also United States v. Armstrong, 517 U.S. 456, 468 (1996) ("the government must respond to a prima facie case of selective prosecution").

As indicated in the quote from Nelson, prosecution based on any impermissible motive is prohibited, and that motive need not be, for example, race-based, even though that is often the basis for selective prosecution claims. Relatedly, a defendant need not establish that he is part of a protected class of people who were discriminated against; impermissible motives directed toward an individual suffice. See United States v. Falk, 479 F.2d 616, 619 (7th Cir. 1973); Moss v. Hornig, 314 F.2d 89, 93 (2d Cir. 1963); see also United States v. Steele, 461 F.2d 1148, 1151 (9th Cir. 1972)(prosecution may not be brought based on "arbitrary classification"). Nor must a defendant establish that the impermissible prosecutorial motive was based on the defendant's exercise of a constitutional right. See Falk, 479 F.2d at 620 n.5. Accordingly, the Ninth Circuit has held that such a claim may be based on discriminatory plea bargaining toward male versus female defendants,[8] or discriminatory prosecution of census resisters. See United States v. Redondo-Lemos, 27 F.3d 439, 441 (9th Cir. 1994); United States v. Steele, 461 F.2d at 1150-51; see also Dixon v. District of Columbia, 394 F.2d 966, 968 (D.C. Cir. 1968) ("the government employs an impermissible classification when it punishes those who complain against police misconduct and excuses those who do not").

**2.   Outrageous Government Conduct**

As the Supreme Court recognized in United States v. Russell, 411 U.S. 423, 43-32 (1973), the conduct of law enforcement officials may be so "outrageous that due process principles would absolutely bar the Government from invoking judicial process to obtain a conviction." In United States v. Simpson, 813 F.2d 1462, 1464-65 (9th Cir. 1987), the Ninth Circuit relied on Russell and recognized that dismissal on due process grounds is appropriate "when the conduct of law enforcement officers is so grossly shocking and so

//
//

---

[8]   Defense counsel is not aware of males ever being considered a protected class for equal protection analysis.

outrageous as to violate the universal sense of justice."[9] (Quotation omitted.) The Ninth Circuit reiterated this holding in United States v. Restrepo, 930 F.2d 705, 712-13 (9th Cir. 1991).

**C.   The Government's Conduct Here Amounts To Both Impermissible Selective Prosecution And Outrageous Government Conduct, And The Court Should Compel Discovery**

It is apparent the government never prosecutes anyone who is accused solely of a §1304(e) violation; if so, hundreds of such cases would pass through this courthouse every year. Thus, Mr. Duarte is being subject to the most selective of prosecutions. It is also clear that federal authorities arrested, detained, and are prosecuting Mr. Duarte as a "courtesy" to state officials, because those state officials don't have probable cause to hold Mr. Duarte. That is outrageous government conduct.

To the extent there is any question as to the factual predicates for these claims, the Court should order discovery with respect to the motive for bringing this prosecution, including any materials or information relating to any request that federal authorities arrest and hold Mr. Duarte while state and/or local authorities investigate him for a non-federal offense(s), or that such is the actual motive for the government's charging Mr. Duarte. The Court should also compel production of any materials or information with respect to the numbers of people charged, nationally or locally, solely with a violation of 18 U.S.C. §1304(e), any information or materials relating to policies and/or practices as far as arresting and/or charging for such, and any information with respect to the countless people found to have committed such a violation who were not arrested and/or charged. These materials are discoverable pursuant to both Brady and Rule 16. See, e.g., United States v. Gamez-Orduno, 235 F.3d 453, 462 (9th Cir. 2000) (Brady); United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2003) (Rule 16); see also Adv. Notes to 2002 Amendments to Fed. R. Crim. P. 12(b)(4) (stating that Rule 12(b)(4) "addresses the government's requirement to disclose discoverable information for the purpose of facilitating timely defense objections and motions").

The government has refused to comply with commensurate discovery requests, and apparently is relying on United States v. Armstrong, 517 U.S. 456 (1996), to claim it need not provide such discovery. Armstrong holds that for a defendant who claims selective prosecution to be entitled to discovery about other

---

[9]  The Ninth Circuit also noted that a district court may rely on its supervisory power to dismiss based on outrageous government conduct. See Simpson, 813 F.2d at 1464 n.2; see also Hampton v. United States, 425 U.S. 484 (1975) (Powell, J., concurring).

1  cases, that defendant must make "a credible showing of different treatment of similarly situated persons."
2  Armstrong is not a shield against the requested discovery, for many reasons.
3     It is useful to begin with a review of Armstrong. There, the defendants raised a selective prosecution
4  claim, asserting they were prosecuted for crack offenses because they were black. They sought discovery
5  with respect to other cases prosecuted by the United States Attorney's office, but they didn't present credible
6  evidence that similarly-situated non-blacks were not so prosecuted. See id. at 459. The Supreme Court
7  framed the issue thus: "we consider the showing necessary for a defendant to be entitled to discovery on a
8  claim that the prosecuting attorney singled him out for prosecution on the basis of his race." Id. at 458. The
9  court held that defendants seeking such discovery must make a "credible showing of different treatment of
10 similarly situated persons" to be entitled to discovery. Importantly, the Court contrasted the test for a Batson
11 challenge, and noted that in such a context "the trial judge need not review prosecutorial conduct in relation
12 to other" cases. Id. at 468. Conversely, in Armstrong the defendants were asking for discovery about other
13 cases.
14     Mr. Duarte's discovery request is not precluded by Armstrong, for four reasons.
15     First, Mr. Duarte is not raising only a selective prosecution motion, and the Armstrong holding is
16 limited to such claims. See, e.g., United States v. Zone, 403 F.3d 1101, 1107, 1110-11 (9th Cir. 2005)
17 (holding that defendant making discovery request regarding sham state prosecution, in violation of double
18 jeopardy, need only making *prima facie* showing of materiality, and rejecting dissent's argument that elevated
19 Armstrong-type showing need be made); see also Armstrong, 517 U.S. at 471 ("I do not understand the
20 Court to have created a major limitation on the scope of discovery available under Federal Rule of Criminal
21 Procedure 16. . . . As I see it, the Court has decided a precise issue") (Ginsburg, J., concurring); id. ("I join
22 the Court's opinion, but in its discussion of [Rule 16] only to the extent of its application to the issue in this
23 case") (Souter, J., concurring); id. at 471-76 (same) (Breyer, J., concurring). Mr. Duarte is also raising an
24 outrageous government conduct claim, and a related Fourth Amendment claim that is set out in Section V.B.4
25 above.
26     Second, Mr. Duarte is not merely seeking discovery pursuant to Rule 16, he is also relying on Brady.
27 Armstrong deals only with Rule 16.
28 //

1  Third, Mr. Duarte is not seeking a trove of information about other cases, which could raise issues
2  with respect to separation of powers and revealing secretive enforcement policy, concerns at the root of the
3  <u>Armstrong</u> holding.  <u>See, e.g.</u>, 517 U.S. at 465.  Most of the information Mr. Duarte seeks is with respect to
4  the government's motive in bringing this case.  To the extent he seeks any information about other cases, it
5  is mostly with respect to statistics about how often §1304(e) is charged in isolation.  However, to the extent
6  any of the policy concerns raised in <u>Armstrong</u> are implicated, the Court may appropriately circumscribe a
7  discovery order, or enter a protective order.

8  Finally, even applying the <u>Armstrong</u> test, Mr. Duarte has made more than a credible showing he
9  is being treated differently than countless similarly-situated individuals.  While there is no indication anyone
10 has been prosecuted in this district solely for violating §1304(e), common sense tells us many people have
11 been found to have committed that offense, and have been caught doing so by immigration authorities at
12 checkpoints, the border, and on roving patrols.  Alternatively, the Court could simply ask the government
13 if it denies that hundreds or thousands of people could be charged annually in this district solely with
14 violating §1304(e), but never are; this would be a good test of the government's candor with the Court.

## VIII.
## **CONCLUSION**

The Court should grant the motions set out above.

Respectfully submitted,

Date:  February 11, 2008                    */s/ TODD W. BURNS*
                                             TODD W. BURNS
                                             Federal Defenders of San Diego, Inc.
                                             Attorneys for Mr. Duarte-Celestino
                                             Todd_Burns@fd.org

## INDEX OF EXHIBITS

| Exhibit A | Declaration of Orlando Duarte-Celestino |
|---|---|
| Exhibit B | Declaration of Todd Burns |
| Exhibit C | Correspondence to Michelle Pettit, AUSA |
| Exhibit D | Discovery |
| Exhibit E | Complaint |
| Exhibit F | Application to Replace Permanent Residence Car |

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

    1 Courtesy Copy to    Honorable Barbara L. Major

    1 Copy via CM/ECF to    Michelle Pettit, U.S. Attorney via ECF/NEF

    1 Copy to Defendant

Dated: July 13, 2007                   */s/ Todd W. Burns*
                                          TODD W. BURNS
                                          Federal Defenders of San Diego, Inc.
                                          225 Broadway, Suite 900
                                          San Diego, CA 92101-5030
                                          (619) 234-8467  (tel)
                                          (619) 687-2666  (fax)
                                          e-mail: todd_burns@fd.org