TODD W. BURNS
California State Bar No. 194937
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone No. (619) 234-8467
Email: Todd_Burns@fd.org

Attorneys for Mr. Duarte

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE THOMAS J. WHELAN)

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 08CR0325-W |
| Plaintiff-Appellee, | |
| v. | **DEFENDANT/APPELLANT'S OPENING BRIEF CHALLENGING MAGISTRATE JUDGE'S DISMISSAL WITHOUT PREJUDICE, AND REQUESTING SANCTIONS** |
| ORLANDO DUARTE-CELESTINO, | |
| Defendant-Appellant. | |

**I.**

**INTRODUCTION**

It is apparent the federal government colluded with local authorities to detain Orlando Duarte-Celestino while local authorities investigated him for murder. Following a glaringly illegal arrest and detention by local authorities, the federal government stepped-in and charged Mr. Duarte with an unprecedented offense (*i.e.*, failure to carry a green card) which, given obvious legal issues, it could never prove, nor, likely, did it intend to try. When finally required to answer Mr. Duarte's motions, the government moved to dismiss its information <u>without prejudice</u>. Mr. Duarte objected thereto, moving that any dismissal be with prejudice. On February 21, 2008, Magistrate Judge Barbara Major signed the government's boilerplate order, dismissing without prejudice. That order did not address Mr. Duarte's opposition.

Mr. Duarte hereby appeals the dismissal <u>without prejudice</u>, as any dismissal should have been with prejudice. See Fed. R. Crim. P. 58(g); Local Crim. Rule 58.1(c). Mr. Duarte also requests the Court impose appropriate sanctions on the government.

08CR0325-W

## II.

## **RELEVANT BACKGROUND**[1]

**A.     Events Before Appearance In Federal Court**

According to media coverage, Orlando Duarte-Celestino is (or was) either a "person of interest" or a suspect in a Golden Hills murder. At the time this case was litigated before Magistrate Judge Major, it seemed to defense counsel that Mr. Duarte became an arrest target because he is homeless, and frequents the area of Golden Hills where the victim was found.[2] Apparently based on this, he was arrested on either January 23 or 24, 2008 (a Wednesday), in the morning. He was arrested without a warrant, at a home where he was staying as an overnight guest. All of his belongings were seized, also without a warrant.

Mr. Duarte was taken to the San Diego police station on Broadway Avenue. After Mr. Duarte arrived there, saliva and hair samples were taken from him, and he was questioned about, among other things, the location of his green card. Shortly thereafter, he was questioned about some photos and his routine. At no time prior to this questioning had he been advised of his Miranda rights. It was only later, when he was hooked up to a polygraph machine, that Mr. Duarte was first advised of his Miranda rights.

After being questioned all day on the day of his arrest, Mr. Daurte was taken to the San Diego County jail in downtown San Diego, where he was held for several days without being taken to court, having a lawyer appointed, meeting with a lawyer, or being informed what was happening.

On January 31, 2008, Mr. Duarte was picked up at the downtown County jail by United States immigration officials, who took him to be fingerprinted and photographed, and then took him to George Bailey San Diego County jail, where he spent the night. Immigration officials picked him up at George Bailey the next morning, and took him to federal court on February 1, after which he was taken to the Metropolitan Correctional Center ("MCC") in San Diego. The first time he went to court following his arrest was his federal court appearance on February 1, 2008.

---

[1]    This background is taken from Mr. Duarte's February 11, 2008 memorandum, and was supported by declarations attached thereto.

[2]    Defense counsel has since had conversations with the Assistant District Attorney assigned to the relevant murder investigation, but those conversations are not part of the record, nor does the content thereof add anything relevant to the issues raised herein.

1    At no time since Mr. Duarte was arrested by the San Diego police has anyone taken him before an
2 immigration judge, nor notified him that he is subject to deportation or other immigration proceedings.
3    As mentioned in magistrate court on February 5, 2008, undersigned counsel has reviewed Sheriff's
4 booking records from the San Diego County jail, which relate to Mr. Duarte, and there are a few points that
5 bear noting. First, the Sheriff's records indicate Mr. Duarte was arrested on January 24, 2008, but that may
6 be because he was not booked into the jail until that date; as mentioned above, Mr. Duarte's recollection is
7 he was arrested on January 23.
8    Second, the Sheriff's records indicate Mr. Duarte was released on January 30, 2008; however, he was
9 not booked into the MCC until January 31, 2008. The explanation for this seems to be that on January 28,
10 2008, ICE Agent Michael Haynes (the author of the probable cause statement accompanying the complaint
11 in this case), requested that Sheriff's deputies "rebook and release to ICE agents in the AM." According to
12 the Sheriff's records, this "re-arrest" and "re-book" was with respect to "deportation proceedings," although
13 those never occurred. It is obvious what happened here: the jail officials would not continue to hold Mr.
14 Duarte without any charges pending, so Agent Haynes requested they continue to hold him with respect to
15 non-existent "deportation proceedings."

**B.    Proceedings In This Case**

    **1.    The Charge And Motion To Detain**

18    On January 31, 2008, the government filed a complaint alleging Mr. Duarte violated 8 U.S.C.
19 §1304(e), because he didn't have his green card in his possession when he was illegally arrested by local
20 authorities on January 24, 2008.[3] Section 1304(e) is a class C misdemeanor -- just above an infraction -- and
21 is punishable by a maximum of thirty days in prison and $100 fine. From the perspective of maximum
22 penalties, it is less serious than unauthorized use of Woodsy the Owl and Smokey the Bear. See 18 U.S.C.
23 §§711 (six months custody and $500 fine). There are few, if any, less serious misdemeanors.
24    Section 1304(e) has a noteworthy lack-of-history. The government never -- or almost never --
25 charges §1304(e) in isolation. Defense counsel has had a search run of Federal Defenders' records relating
26 to new complaints dating back to 1980, and cannot find a single case of §1304 being charged in isolation.

---

[3]    On February 7, 2008, the government filed an information containing the same charge.

3                                         08CR0325-W

A search of Westlaw reveals only three cases -- nationwide -- in which §1304(e) seemed to be the only charge involved: (1) United States v. Abrams, 422 F.2d 86 (2d Cir. 1970), in which an attorney was charged with causing aliens to violate §1304(e), because he didn't forward to his clients green cards the INS mailed to him; (2) United States v. Hernandez, 2005 WL 1058885 (E.D. Wis. 2005), in which the §1304(e) charge appeared to be part of a plea bargain based on the defendant's false claim to United States citizenship; and (3) United States v. Mendez-Lopez, 528 F. Supp. 972 (D. Okla. 1981), in which the §1304(e) charge was a mistake, which resulted in reversal. Thus, the forty-year-old Abrams case is really the only case in which §1304(e) was truly charged in isolation, and it is starkly different from this case.

That §1304(e) cases are almost never charged is something this Court knows from experience and common sense. Hundreds of thousands of green card holders live and pass through this district annually (and pass through border and immigration checkpoints), and many will at time forget their green cards at home, lose them, or have them stolen. Common sense tells us what happens when these people encounter immigration authorities: the authorities run a check, and if they confirm the person is legally here, the person is allowed to go. Immigration authorities certainly don't go to the efforts to arrest, detain, and prosecute for §1304(e) those they know are here legally; that is, those similarly situated to Mr. Duarte.

Despite all this, at the first court appearance on February 1, 2008, the government moved for detention, and asked for the maximum amount of time to "prepare" for the hearing. Magistrate Judge Major obliged: since February 1 was a Friday, she set the detention hearing for Tuesday, February 5, 2008.

Defense counsel was assigned the case a few hours after Mr. Duarte's initial appearance, promptly had the detention hearing moved to Monday, February 4, and spent the weekend briefing the detention issue. Government counsel called defense counsel on February 4, and said, without explanation, she would be withdrawing her motion to detain. Despite the scheduled hearing, Mr. Duarte was not brought to court on February 4.

On February 5, the government moved for a bond it knew Mr. Duarte could not meet -- in fact, defense counsel told government counsel as much during a telephone call on February 4. Magistrate Judge Major set a bond of $5,000, secured by Mr. Duarte's signature, but ordered Mr. Duarte to stay at Correctional Alternatives, which, as anyone who has ever stayed there knows, is not freedom. Defense counsel asked that trial be set for that week, which was denied.

**2.     Subsequent Proceedings**

At a February 7, 2008 "status" hearing, Mr. Duarte sought to expedite the proceedings by having trial set as soon as possible. The government requested a briefing and motion schedule that would draw the case out for a month or two. Magistrate Judge Major would not set a trial date, and instead set a motion hearing date for February 28 at 9:00 a.m. Mr. Duarte's pleadings were due by February 11, and the government was to respond by February 19. Magistrate Judge Major also refused to rule on Mr. Duarte's oral motion that the government be compelled to provide discovery with respect to its motive for brining this case, and collusion with state authorities.

On February 11, Mr. Duarte filed several motions relating to the myriad constitutional violations surrounding his arrest and detention, selective prosecution and outrageous government conduct, and illegal prosecution of a status offense (*i.e.*, as a homeless, poor man, Mr. Duarte could not afford the $370 green card replacement fee). Mr. Duarte also requested the court to compel discovery from the government regarding its motivation for bringing and prosecuting this case, and the collusion between federal and local authorities, which discovery Mr. Duarte repeatedly requested from government counsel.

At 4:59 p.m. on February 19, 2008 -- that is, the very last minute its responsive pleadings were due -- the government moved to dismiss the charge against Mr. Duarte, <u>without prejudice</u>. (With the withdrawn motion to detain, one starts to detect a pattern of insincerity.) Without any explanation, the government asserted the dismissal was in the "interest of justice." This is nonsense: the government moved to dismiss because its abusive ruse had reached the end of the road, and would soon be subject to scrutiny.

As a result of the government's improper actions, Mr. Duarte spent ten days in "federal custody" (*i.e.*, from when the federal detainer was lodged on January 28, until he was released to a halfway house on February 6), and was required to live in a halfway house, where his liberty was severely constricted, for seventeen days. Thus, he was in some form of custody for twenty-seven days, based on an offense that is never prosecuted, and which carries a maximum thirty-days imprisonment. In addition, the government wasted defense counsel's time, and the time and resources of the district court, the Marshals, the MCC, Correctional Alternatives, *et cetera*. Finally, abusing the judicial process harms all of us.

//
//

Despite all of this, and without any discussion, Magistrate Judge Major signed the government's boilerplate order dismissing the case <u>without</u> prejudice. Mr. Duarte appeals that order, and requests that the Court order production of discovery, and appropriate sanctions.

## II.

## **THE COURT SHOULD ORDER THE GOVERNMENT TO PRODUCE DISCOVERY**

Although it is apparent the government acted abusively, the Court should order discovery to complete the record here. As set out in Mr. Duarte's February 11, 2008 memorandum, he has requested discovery, and asked that Magistrate Judge Major compel discovery, to get to the bottom of the level and breadth of misconduct involved. The Court should order production of all discovery relating to the government's motivation for bringing this case, and for proceeding as it did, including any discovery relating to collusion between federal government and local authorities. Once such discovery is produced, the Court should hold an evidentiary hearing.

## III.

## **THE MAGISTRATE JUDGE SHOULD HAVE DISMISSED WITH PREJUDICE BASED ON THE GOVERNMENT'S OUTRAGEOUS MISCONDUCT**

The magistrate judge should not have let the government's misconduct go completely unremedied, which is what she did when she refused to dismiss <u>with</u> prejudice. Federal Rule of Criminal Procedure 48(b), and the court's inherent and supervisory powers to remedy constitutional and statutory violations, gave the magistrate judge ample authority to dismiss with prejudice. The government's conduct gave her ample reason to do so.

**A.    Pursuant To Federal Rule Of Criminal Procedure 48(b), The Magistrate Judge Should Have Dismissed With Prejudice**

The government moved to dismiss without prejudice, relying on Federal Rule of Criminal Procedure 48(a), which states, in relevant part: "The government may, with leave of court, dismiss an indictment, information, or complaint." However, Rule 48(b) also allows the Court to dismiss if, among other things, "unnecessary delay occurs in . . . bringing a defendant to trial." By waiting until the very last minute, and then not filing any responsive pleadings, the government was necessarily delaying the proceedings, and the setting of any trial date.

1      Rule 48 does not set out a test to determine whether a dismissal should be with, or without, prejudice.  In <u>United States v. Simmons</u>, 536 F.2d 827 (9th Cir. 1976), the Ninth Circuit set out the test for determining when Rule 48(b) dismissal should be with prejudice, but only in a context where "there has been <u>no constitutional</u> violation."  <u>See id.</u> at 833, 835 (emphasis added).  In that context, a court must give the government "forewarning of the consequences," and exercise "caution," before dismissing with prejudice.  <u>See id.</u> at 834.

However, unlike <u>Simmons</u>, Mr. Duarte asserted that dismissal with prejudice was warranted due to constitutional violations clearly set out in his pre-trial motion memorandum:  specifically, that the whole prosecution was brought as a ruse to hold him for state authorities.  In that context, <u>Simmons</u>, and other Ninth Circuit case law, indicates that the <u>Simmons</u> test doesn't apply.  For example, in <u>United States v. Hattrup</u>, 763 F.2d 376, 377-78 (9th Cir. 1985), the Ninth Circuit suggested the forewarning requirement doesn't apply if there are "facts or allegations of misconduct by the government which would call for the harsh remedy of dismissal without prejudice."  Relatedly, in <u>United States v. Towill</u>, 548 F.2d 1363, 1370 (9th Cir. 1977), the Ninth Circuit held that dismissal with prejudice was warranted to  prevent "substantial prejudice and government harassment."  And in <u>United States v. Hayben</u>, 869 F.2d 1483, 1489 (9th Cir. 1988), the Ninth Circuit held that dismissal with prejudice is an appropriate remedy for "a clear act of bad faith" by the government.

Common sense also supports that there need not be forewarning in the circumstances presented, and, even if <u>Simmons</u> has some application here, any "caution" limitation was met.  Does a court need to forewarn the government that it should not abuse the judicial process, violate due process and equal protection rights, and essentially mislead the court?  Does a "caution" limitation prevent an appropriate response to such?  The answer to both questions is no, which is why the magistrate judge should have dismissed with prejudice.  First, however, she should have ordered production of discovery and an evidentiary hearing to get to the bottom of the apparent government abuses in this case.

**B.     Pursuant To Its Supervisory Powers, The Magistrate Judge Should Have Dismissed With Prejudice**

It is hard to know why the magistrate judge denied Mr. Duarte's request that she dismiss with prejudice, as she signed a boilerplate government-produced order, and gave no reasons for the refusal.

However, even if she had incorrectly concluded that Rule 48(b) didn't give her such authority, she could and should have relied on the court's power to remedy constitutional violations, and the court's supervisory powers. As the Ninth Circuit has held, "Dismissal of an indictment is warranted where outrageous law enforcement conduct violates due process. [Citation omitted.] Even where no due process violation exists, a federal court may dismiss an indictment pursuant to its supervisory powers." United States v. Ross, 372 F.3d 1097, 1107 (9th Cir. 2004) (citing Bank of Nova Scotia v. United States, 487 U.S. 250, 255 (1988)). Naturally, these powers encompasses the right to dismiss this case with prejudice.

## IV.

## THE COURT SHOULD SANCTION THE GOVERNMENT FOR ITS OUTRAGEOUS CONDUCT

Mr. Duarte requests that the Court order production of discovery and hold an evidentiary hearing to establish a complete record with respect to the government's obvious misconduct, and then impose appropriate monetary sanctions.

"Prosecutors may . . . be sanctioned even if their misconduct does not prejudice[4] the defendant: 'In cases involving prosecutorial misconduct which is neither flagrant nor prejudicial, a district judge can still sanction the misconduct, but the sanction must be proportionate to the misconduct.'" Ross, 372 F.2d at 1111 (quoting United States v. Jacobs, 855 F.2d 652, 655 (9th Cir. 1988)). In addition, "[s]overeign immunity does not bar a court from imposing monetary sanctions under an exercise of its supervisory powers," to provide a "remedy for violation of recognized statutory, procedural, or constitutional rights, and to 'deter future government misconduct and protect the integrity of the judicial process.'" United States v. Woodley, 9 F.3d 774, 782 (9th Cir. 1993) (quoting United States v. Simpson, 927 F.2d 1088, 1092 (9th Cir. 1991) (Nelson, J., concurring)).

Furthermore, "the Hyde Amendment was enacted as a method through which to sanction the government for 'prosecutorial misconduct,'" and it states, in relevant part:

> [T]he court, in any criminal case . . . may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith . . . .

---

[4] Of course, Mr. Duarte was clearly prejudiced.

1 United States v. Manchester Farming Partnership, 315 F.3d 1176, 1182 (9th Cir. 2003) (quoting Hyde
2 Amendment to 18 U.S.C. §3006A).

3       To adequately address the sanctions issue, Mr. Duarte requests that the Court order production of
4 discovery with respect to the government's motives for bringing this case, and any collusion with state
5 authorities. The Court should then hold an evidentiary hearing on the matter.

6       However, considering what is obvious here, Mr. Duarte submits the following sanctions are
7 appropriate: (1) that the government pay Mr. Duarte $1000 per each day Mr. Duarte spent in federal custody
8 (*i.e.*, either at the County jail(s) or the MCC), and $500 for each day Mr. Duarte spent at Correctional
9 Alternatives; and (2) the government reimburse Federal Defenders for the cost of defending Mr. Duarte.

## V.

## **CONCLUSION**

12       The Court should order the magistrate judge to dismiss the information with prejudice, and should
13 conduct further proceedings on the issue of sanctions.

                             Respectfully submitted,

17 Date: April 4, 2008               */s/ TODO W. BURNS*
                             TODD W. BURNS
                             Federal Defenders of San Diego, Inc.
                             Attorneys for Mr. Duarte-Celestino
                             Todd_Burns@fd.org

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of information and belief, and that a copy of the foregoing document has been caused to be delivered this day upon:

    1 Courtesy Copy to    Honorable Thomas J. Whelan

    1 Copy via CM/ECF to    Michelle Pettit, AUSA

Dated: April 4, 2008                      */s/ Todd W. Burns*
                                               TODD W. BURNS
                                               Federal Defenders of San Diego, Inc.
                                               225 Broadway, Suite 900
                                               San Diego, CA 92101-5030
                                               (619) 234-8467 (tel)
                                               (619) 687-2666 (fax)
                                               e-mail: todd_burns@fd.org